UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAYMOND JEAN CHARLES PECK,

Plaintiff,

v.

NILES POLICE DEPARTMENT et al.,

Defendants.

Case No. 1:25-cv-779

Hon. Hala Y. Jarbou

______________________________/

**OPINION**

This is a civil rights action brought by Plaintiff Daymond Jean Charles Peck under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 7.) By opinion and order entered August 19, 2025, the Court dismissed Plaintiff's claims against three of the five named defendants. (Op. and Order, ECF Nos. 8, 9.) Plaintiff's remaining claims are his Eighth/Fourteenth Amendment claims and state law claims against Niles Police Department Reserve Officer Wainscott and Berrien County Sheriff's Deputy Hairston. (Op., ECF No. 8, PageID.81.)

This matter is now before the Court on Defendant Wainscott's motion to dismiss for failure to state a claim (ECF No. 12) and on Defendant Hairston's motion to dismiss for failure to state a claim (ECF No. 20); Plaintiff has not responded to either motion. Moreover, because Plaintiff is proceeding *in forma pauperis*, under 28 U.S.C. § 1915(e)(2), the Court must dismiss the complaint at any time if the Court determines that the action is frivolous or malicious, or if it fails to state a claim on which relief may be granted. For the reasons set forth below, the Court will grant both

motions to dismiss for failure to state a claim and, pursuant to 28 U.S.C. § 1915(e)(2), dismiss Plaintiff's complaint as frivolous.

## Discussion

### I. Factual Allegations

Plaintiff alleges that on May 1, 2024, he was transported to the Berrien County Jail from Corewell Health Lakeland Hospital in Niles, Michigan. (Compl., ECF No. 1, PageID.6.) Defendant Wainscott was the officer who transported Plaintiff. (*Id.*) Plaintiff alleges that he tested positive for fentanyl while at the hospital, and that he was a daily user of fentanyl and other opiates before his incarceration. (*Id.*)

Plaintiff contends that upon his arrival at the jail, Defendant Wainscott was "responsible for handing over the hospital report to the booking officers." (*Id.*) Defendant Hairston was the booking officer who interacted with Defendant Wainscott. (*Id.*) Defendant Hairston was also the officer who booked Plaintiff upon his arrival at the jail. (*Id.*) Defendant Hairston placed Plaintiff in the "withdrawal tank" used for inmates who are detoxing. (*Id.*)

The paragraph above recounts all of the allegations Plaintiff makes against Defendants Wainscott and Hairston. Plaintiff suggests that after transport to the jail and placement in the "withdrawal tank," the unidentified nurses and deputies with whom he interacted failed to check on his wellbeing with sufficient frequency. (*Id.*) Plaintiff suggests that he suffered "symptoms of withdrawal," but he does not indicate the nature or severity of those symptoms. (*Id.*)

With regard to Defendant Wainscott, Plaintiff states:

> By Reserve Officer Wainscott failing to present hospital report to jail deputies, I am pursuing claims of due process clause, substantive due process, 8th Amendment, 5th Amendment, 14th Amendment, deprivation of rights under color of state law, Civil Rights Act – 1871, negligence under state law, negligence per se, civil conspiracy under 42 U.S.C. 1986, and civil conspiracy under state law.
>
> * * *

> Plaintiff requests relief by Reserve Officer Wainscott in the sum of $100,000.00 for the following: failing to present jail deputies with hospital report, disregarding the health and safety of Plaintiff, having knowledge of Plaintiff having [fentanyl] in his system.

(*Id*., PageID.8, 9.) Similarly, with regard to Defendant Hairston, Plaintiff states:

> By Deputy Hairston failing to present hospital report to nurses from Vital Core and failing to conduct his own report of why I was placed in the withdrawal tank and disregarding my health and safety, I am pursuing claims of due process clause, substantive due process, 8th Amendment, 5th Amendment, 14th Amendment, deprivation of rights under color of state law, Civil Rights Act – 1871, negligence under state law, negligence per se, civil conspiracy under 42 U.S.C. 1986, and civil conspiracy under state law.
>
> * * *
>
> Plaintiff requests relief by Deputy Hairston in the sum of $200,000.00 for the following: having knowledge of Plaintiff having [fentanyl] in his system, failing to present hospital report to Vital Core staff, failing to create detox sheet for Plaintiff, making Plaintiff enter a cell without medical evaluation, failing to notify Vital Core staff of Plaintiff's state of health, disregarding health and safety of Plaintiff.

(*Id*.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

> alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

When resolving Defendants' dispositive motions, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Plaintiff's complaint is replete with unsupported inferences and legal conclusions. When whittled down to just the facts, the allegations with regard to Plaintiff's claims accepted as true and construed in a light most favorable to Plaintiff do not "'nudge' his claim . . . 'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570).

### A. Plaintiff's § 1983 Claim for Deliberate Indifference to his Serious Medical Need

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself; thus, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, the only federal claims that remain against Defendant Wainscott and Hairston are his claims under the Eighth or Fourteenth Amendment. The Eighth and Fourteenth Amendments are presented as alternative sources of protection because Plaintiff does not specifically allege whether he was jailed following conviction or as a pretrial detainee. As the Court explained in the August 19, 2025, opinion:

> Plaintiff also invokes the Eighth Amendment without providing further explanation. Presumably, Plaintiff invokes the Eighth Amendment's prohibition on cruel and unusual punishment. Plaintiff also indicates he is raising claims under the Fourteenth Amendment's Due Process Clause. The Court construes Plaintiff's complaint to assert claims premised upon a lack of adequate medical care . . . .
>
> Plaintiff does not indicate whether he is a pretrial detainee or a convicted prisoner. Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citations omitted). The application of the proper constitutional right depends on the nature of Plaintiff's detention: the Eighth Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id*. (citations omitted).

(Op., ECF No. 8, PageID.75.) At the time of the Court's prior opinion, in this circuit, different standards were applied to claims raised by convicted prisoners under the Eighth Amendment than were applied to claims raised by pretrial detainees under the Fourteenth Amendment. (*Id*., PageID.75–77.) That is no longer the case. *Poynter v. Shirley*, __ F.4th __, 2026 WL 2641092, at *16 (6th Cir. Sept. 8, 2026) ("*Farmer v. Brennan*'s subjective standard properly governs deliberate-indifference cases brought under the Fourteenth Amendment.").

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A viable Eighth Amendment claim

consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

### 1. Objective Component

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane County*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Plaintiff alleges that he used fentanyl and other opiates daily. (Compl., PageID.6.) Plaintiff also explains that he experienced withdrawal symptoms as soon as the morning after he was brought to the Berrien County Jail. (*Id*.) Certainly, overdose or withdrawal symptoms can be sufficiently serious to satisfy the objective element of a deliberate indifference claim, but it depends on the symptoms that Plaintiff exhibited. As the Sixth Circuit Court of Appeals explained in *Burwell v. City of Lansing, Michigan*, 7 F.4th 456 (6th Cir. 2021):

> We have held that "the objective prong is usually met" in overdose cases "where death results from a failure to provide medical services, and there is evidence that lay persons, . . . recognized the necessity for a doctor's attention." *Hinneburg v. Miron*, 676 F. App'x 483, 486–87 (6th Cir. 2017). In *Hinneburg*, "the extreme nature of [the inmate's] intoxication" met the objective component where other inmates testified that that the deceased inmate was "visibly high," "nodding out and talking to herself," and repeatedly dropped her head. *Id*. at 484, 486. In another case, we found "it incontrovertible that [the detainee's] symptoms show[ed] . . . a sufficiently 'serious medical condition,'" where the detainee, a diabetic who died

> in custody from heroin withdrawal, vomited ("a clear manifestation of internal physical disorder"), had diarrhea causing dehydration, and was seen lying on the cell floor. *Preyor v. City of Ferndale*, 248 F. App'x 636, 642 (6th Cir. 2007); *see also Border v. Trumbull Cnty. Bd. of Comm'rs*, 414 F. App'x 831, 837–38 (6th Cir. 2011) (detainee's medical need was sufficiently serious and obvious where he appeared "severely intoxicated," "huddled and slumped over," had red and glazed eyes, "had difficulty walking and staying awake," "slurr[ed] his speech," and later died from a drug overdose); *Bertl v. City of Westland*, No. 07-2547, 2009 WL 247907, *5–6 (6th Cir. Feb. 2, 2009) (inmate who died of severe alcohol withdrawal had "visibly serious medical condition" that "satisfied the objective component" where he was "lying face down on the floor of his cell, almost comatose, unresponsive and having seizure-like spasms").
>
> Unlike *Spears*, where medical personnel examined the overdosing detainee and determined that he exhibited no visible signs of an overdose, *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009), video evidence shows Phillips in clear medical distress. For nearly 40 minutes, the video shows Phillips bent at the waist, swaying and rocking on the bench inside his cell, grabbing his head and midsection, dropping his sandwich numerous times, and falling to the floor repeatedly. Phillips ultimately fell to the ground where he lay motionless until officers attempted to revive him hours later. About 45 minutes after Phillips collapsed, a pool of vomit began to form around his head that grew over time.

*Burwell*, 7 F. 4th at 464.

Plaintiff does not describe any symptom of withdrawal that he suffered, nor does he allege that his symptoms were obvious to either Defendant Wainscott or Defendant Hairston. Accordingly, the Court concludes that Plaintiff has failed to allege facts that support an inference that he suffered from an obvious serious medical need. But even if Plaintiff's allegations regarding the objective prong of the *Farmer* deliberate indifference analysis sufficed, his allegations fall short on the subjective prong.

**2. Subjective Component**

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff contends that Defendant Wainscott's failure to give the hospital report—the report that purportedly indicated that Plaintiff had tested positive for fentanyl—to Defendant Hairston. Plaintiff, however, does not allege any facts to suggest that the failure was knowing and purposeful. Moreover, Plaintiff does not allege facts that support an inference that Defendant Wainscott was aware that Plaintiff was subject to a substantial risk of serious harm or that Defendant Wainscott consciously disregarded such a risk. Finally, Plaintiff acknowledges that he was initially placed in the "withdrawal tank" and remained there for "several days" and was visited by nurses multiple times during those several days. (Compl., PageID.6.)

Plaintiff contends that Defendant Hairston failed to give the hospital report to the facility nurses and otherwise failed to provide Hairston's own report regarding why Plaintiff was placed in the withdrawal tank. Plaintiff fails to explain how Defendant Hairston could provide a report to the nurses when Defendant Wainscott never provided the report to Defendant Hairston. Moreover, absent that report, or some basis to know that Plaintiff might suffer withdrawal symptoms, it is an incredible fortuity that Defendant Hairston had the good sense to place Plaintiff in the withdrawal tank.

Plaintiff does not allege any facts that support an inference that Defendant Hairston was aware that Plaintiff was subject to a substantial risk of serious harm. Moreover, Plaintiff does not allege facts that show that Defendant Hairston disregarded that risk. To the contrary, to the extent

that Defendant Hairston was aware of any risk, no matter how slight, the facts that Plaintiff provides suggest that Defendant Hairston gave due regard to addressing that risk by placing Plaintiff in the withdrawal tank.

Because Plaintiff has failed to allege sufficient facts with regard to either component of the *Farmer* deliberate indifference test, he has failed to state a claim upon which relief may be granted. For the same reason, the motions to dismiss filed by Defendant Wainscott and Defendant Hairston will be granted.

**B. Qualified Immunity**

Defendants also ask the Court to dismiss Plaintiff's § 1983 claims against them because they are entitled to qualified immunity. Under this defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

The qualified-immunity inquiry involves two questions: whether the defendant violated a constitutional right and whether that right was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016).

Defendants' qualified immunity defense is based on the bodycam video recorded by Defendant Wainscott at the hospital, during transport, and upon Plaintiff's arrival at the Berrien County Jail. In *Bell v. City of Southfield, Mich*., 37 F.4th 362 (6th Cir. 2022), the Sixth Circuit Court of Appeals explained that review of such video, even upon consideration of a motion to dismiss, was appropriate:

> In qualified-immunity cases, we've previously considered videos at the motion-to-dismiss stage. *See, e.g., Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017). And for good reason. Qualified immunity isn't just a defense to liability—it's immunity from the costs and burdens of suit in the first place. *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007); *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate. *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (highlighting the importance of applying qualified immunity even before discovery); *see Scott*, 550 U.S. at 376 n.2. So when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos. . . .
>
> That said, our use of the videos is limited at this stage. If there is a factual dispute between the parties, we can only rely on the videos over the complaint to the degree the videos are clear and "blatantly contradict[ ]" or "utterly discredit[ ]" the plaintiff's version of events. *Scott*, 550 U.S. at 380. Otherwise, we must accept the plaintiff's version as true. *Id*. This all makes sense—if the indisputable video evidence contradicts Bell's pleadings, his allegations are implausible. *Bailey*, 860 F.3d at 387.

*Bell*, 37 F.4th at 364 (parallel citations omitted); *see also Akima v. Peca*, 85 F.4th 416, 422 (6th Cir. 2023) (quoting *Bell*). Review of the video here reveals Plaintiff's allegations to be at least implausible and, perhaps, deceptive.

Review of the video undercuts all of Plaintiff's allegations against Defendants Wainscott and Hairston. First, the video shows Defendant Wainscott gathering the papers provided by the hospital and then providing those documents to the deputies at the Berrien County Jail. To the extent there was a report showing that Plaintiff tested positive for fentanyl, it appears that Defendant Wainscott provided it. Second, Plaintiff's reference to fentanyl is an apparent attempt to misdirect the inquiry. On the video, Defendant Wainscott, Defendant Hairston, other deputies,

and an examining nurse all asked Plaintiff what he had ingested—urging him to answer honestly because his well-being depended on the jail personnel knowing that information. Plaintiff responded that he had ingested heroin but he would not indicate the amount of heroin he had ingested. Thus, Plaintiff was not placed in the "withdrawal tank" by accident. Third, whether or not Defendant Wainscott or Defendant Hairston informed the nursing staff that Plaintiff had ingested heroin (or any other drug), the first nurse to examine him knew because Plaintiff told her. If other deputies or nurses failed to properly treat Plaintiff's withdrawal symptoms—whatever they may have been—during his several days in the "withdrawal tank," it was not because Defendant Wainscott or Defendant Hairston disregarded the risk that Plaintiff's ingestion of heroin caused.

Here, Plaintiff's Eighth Amendment claim collapses on the first qualified immunity question. Based on the facts construed in Plaintiff's favor, except as blatantly contradicted by the video record of the events, there is no constitutional violation here. Accordingly, Defendants are entitled to qualified immunity. For that reason, as well, Plaintiff's claims against Defendants Wainscott and Hairston are properly dismissed. Moreover, upon consideration of the video, the Court also concludes that Plaintiff's claims are frivolous and properly dismissed for that reason under 28 U.S.C. § 1915(e)(2).

## III. State Law Claims

Plaintiff seeks to invoke this Court's supplemental jurisdiction over state-law tort claims for Defendants' negligence and for civil conspiracy. The Court declines to exercise such jurisdiction.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law

claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

**Conclusion**

Defendants' motions to dismiss are properly granted because Plaintiff's complaint fails to state a claim for deliberate indifference to a serious medical need and because Defendants are entitled to qualified immunity based on the record before the Court. Moreover, the Court will dismiss Plaintiff's state-law claims because it declines to exercise supplemental jurisdiction over those claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge*

*v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

An order and judgment consistent with this Opinion will be entered.

Dated: September 22, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE